**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 16-21775-Civ-WILLIAMS/TORRES

RAFAEL CENDAN,

      Plaintiff,

v.

OFFICER JOSE TRUJILLO, *et al.*,

      Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO EXCLUDE DR. CHAPMAN

This matter is before the Court on Miami-Dade Police Officers Jose Trujillo's, Jason Rodriguez's, Jessica Coello's, Richard Pichardo's, Jorge Gonzalez's, and Marloys Morales's ("Defendants" or the "Officers") motion to exclude the opinions of Rafael Cendan's ("Mr. Cendan" or "Plaintiff") expert witness, Dr. Christopher Chapman ("Dr. Chapman"). [D.E. 283]. Plaintiff responded to Defendants' motion on September 14, 2020 [D.E. 291] to which Defendants replied on September 28, 2020. [D.E. 299]. Therefore, Defendants' motion is now ripe for disposition. After careful review of the motion, response, reply, relevant authorities, and for the reasons discussed below, Defendants' motion is **GRANTED in part and DENIED in part**.[1]

---

[1]    On September 1, 2020, the Honorable Kathleen Williams referred Defendants' motion to the undersigned Magistrate Judge for disposition. [D.E. 288].

## I.   BACKGROUND

Plaintiff filed this action on May 17, 2016 [D.E. 1] with allegations that Miami-Dade Police Officers used excessive force against him during the course of an arrest for armed robbery that took place in January 2015.  Plaintiff led police on a roughly ten-minute car chase before being surrounded in a shopping-center parking lot, forcibly removed from his vehicle, and arrested.  Plaintiff pled guilty in state court to armed robbery, fleeing and eluding, battery on a law enforcement officer, and resisting with violence.  Plaintiff then sued these Defendants under § 1983, claiming that, both during and after his arrest and handcuffing, the Officers used excessive force against him, resulting in severe injuries.[2]

## II.   APPLICABLE PRINCIPLES AND LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony.  *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005).  As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702.  The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence.  *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th

---

[2]    Plaintiff suffered a broken right eye socket, a broken nose, a fractured cheek bone, a fractured jaw, the loss of his top front teeth, and internal bleeding, among other injuries.

Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant."[3] *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as gatekeeper, a court's duty is not to make ultimate conclusions as to the persuasiveness of the proffered evidence. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of

---

[3]    Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

> inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary

4

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 632 (1991)).

### III.   ANALYSIS

Defendants' motion seeks to exclude portions of Dr. Chapman's opinions because his expert report includes many confusing and questionable assertions – many of which are premised on speculation and credibility determinations that lack any support in the underlying record.  Although Defendants do not seek to strike all

of Dr. Champan's opinions (because Defendants acknowledge that he is at least minimally qualified to testify on some matters), they claim that several of his opinions are improper and inadmissible.[4]

Specifically, Defendants take issue with Dr. Chapman's opinion on the concept of noble cause corruption because this is irrelevant to the facts of this case, unscientific, and inflammatory.   Defendants also take aim at Dr. Chapman's opinion that they used deadly force because the Court, not an expert, should advise the jury on the law to be applied.   Going further, Defendants contend that Dr. Chapman should not be allowed to narrate a portion of the arrest video because he relies, to some extent, on unsupported assumptions about what occurred. Defendants reason that interpreting the facts of this case is the jury's role and that Dr. Chapman should not be allowed to transform himself into a fact finder under the guise of expert testimony.   And finally, Defendants request that the Court preclude Dr. Chapman from testifying on any errors the Officers might have committed when they approached Plaintiff's vehicle because the Court has already limited this trial to a single question of whether the Officers used excessive force *after* Plaintiff was apprehended.   We will discuss each argument in turn.

---

[4]      Dr. Chapman is a retired Sergeant of Police with the Township of Cranford Police Department in New Jersey.   During his tenure, Dr. Chapman held, among other roles, the position of patrol officer, police supervisor, federal task force investigator, and undercover narcotics investigator.   Dr. Chapman is currently a fulltime tenured Associate Professor at Kingsborough Community College, where he conducts research in the field of criminal justice and policing.

A.      *Whether Dr. Chapman's Testimony on Noble Cause Corruption is Non-Scientific, Speculative, and Prejudicial*

The first issue is whether Dr. Chapman should be allowed to opine on a concept known as noble cause corruption or, to put it simply, the practice of police officers using unethical or illegal means to achieve noble ends.  Dr. Chapman asserts that noble cause corruption and a police code of silence are possible reasons for the discrepancies on what took place the day the Officers arrested Mr. Cendan. The Officers take issue with this opinion because it is irrelevant, unscientific, speculative, and inflammatory.  Indeed, the Officers suggest that this is merely an attempt to paint law enforcement in broad negative strokes and that – rather than helping the jury decide the facts of this case – this opinion injects negative stereotypes about law enforcement.  The Officers also object forcefully to Dr. Chapman using race as a motivating factor because there is absolutely no evidence that it had any connection to Plaintiff's injuries.  Because Dr. Chapman's opinion is imprecise, unspecific, and relies on nothing more than pure speculation, the Officers request that these unsupported opinions be excluded at trial.

Plaintiff's response is that the concept of noble cause corruption is not a centerpiece of Dr. Chapman's report because it only comprises four out of one hundred pages.  Plaintiff also claims that Dr. Chapman's opinion should stand because, if the jury believes Plaintiff's allegations, it provides one of four possible explanations as to the discrepancies between the testimony of the Officers and Mr. Cendan.

The most glaring shortfall with Plaintiff's response is both he and Dr. Chapman fail to explain how this opinion is reliable when it lacks all evidentiary support.  Plaintiff contends, for instance, that noble cause corruption is "one of four *possible* explanations as to [the] discrepancies between the officers' accounts of the arrest" and that it "*may* have played a role in Sergeant Gonzalez's actions against Mr. Cendan while he was seated in his truck[.]"   [D.E. 291 at 13-14 (emphasis added)].  This is woefully insufficient because, without any explanation as to how his opinion applies to the facts of this case, Dr. Chapman is merely stacking inferences upon inferences with no evidence to rely upon.  While an expert may base an opinion on facts or data reasonably relied upon by experts in a particular field, an expert may not rely upon theoretical speculations, unsupported assumptions, and conclusory opinions that have no connection to the facts of a case.

Making matters worse, Dr. Chapman invokes race as a component of noble cause corruption and Plaintiff suggests that this a relevant factor to be considered in resolving the discrepancies of whether the Officers used excessive force.  But, Dr. Chapman never makes clear the connection as to how the race of anyone is pertinent to the facts of this case.  And Dr. Chapman testified that did not even know the Officers' races, leaving it entirely unclear as to how this opinion has any foundation or relevancy to the issues to be decided at trial:

> Q: When you talk about race being a factor, are you aware of the race of each of the six police officer defendants in this case?
> A: No. And that's not necessary.

[D.E. 285-1 at 92-93].   All that Dr. Chapman has offered is that noble cause

corruption might have been a *possible* explanation for the discrepancies in how the Officers arrested him.  Yet, Dr. Chapman has failed to tie any evidence about this concept to the facts of this case and "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

It appears that Plaintiff has taken the position that, as an expert, Dr. Chapman should be allowed to opine on matters irrespective of whether they have any relevance.  This is, of course, not the standard for allowing expert testimony. An expert is retained to explain issues, not invent them.  Indeed, the "Eleventh Circuit has made clear that courts should not simply 'tak[e] [an] expert's word for it;' instead, a party proposing to use an expert must demonstrate why the expert's experience or expertise makes each particular opinion reliable."  *Jetport, Inc. v. Landmark Aviation Miami, LLC*, 2017 WL 7734095, at *5 (S.D. Fla. July 19, 2017) (citing cases).  And Dr. Chapman's contention that noble cause corruption might somehow be relevant falls far short of meeting the requirements under *Daubert* and Rule 702.  *See, e.g.*, *Unleashed Magazine, Inc. v. Orange Cty., Fla.*, 2008 WL 4304883, at *10 (M.D. Fla. Sept. 16, 2008) ("The Court cannot simply take Mr. Brenner's word for it that his considerable experience renders his opinion reliable. Thus, the Court finds that Mr. Brenner's report and expected testimony are not based on sufficient facts or data and are not the product of reliable principals and methods."); *Dishman v. Wise*, 2009 WL 1938968, at *5 (M.D. Ga. July 7, 2009) ("The

Court cannot take Dr. Clancy's word for it that the delay caused the injuries . . . [because] Rule 702 and *Daubert* require more."). For these reasons, Plaintiff's motion to exclude Dr. Chapman's opinion on noble cause corruption is **GRANTED** because – even if this opinion had an ounce of reliability – Plaintiff has failed to bridge "the analytical gap between the data and the opinion offered." *General Elec. Co.*, 522 U.S. at 146.

### B.   *Whether Dr. Chapman's Opinion on Deadly Force Should be Excluded*

The second issue is whether Dr. Chapman's opinion on the use of deadly force should be excluded. Dr. Chapman states in his expert report that it is "reasonable to opine that physical force and deadly force was used against Mr. Cendan after he was restrained (subdued) by several officers and not actively resisting." [D.E. 284-1 at 40]. Defendants argue that there are two problems with this opinion. The first is that it attempts to dispose of the main issue to be presented at trial and that a jury – not an expert – should make this determination. The second is that it is improper for Dr. Chapman to characterize the Officers' conduct as deadly force because there is no clearly established law in the Eleventh Circuit on whether strikes to the head meet this threshold. Even worse, Defendants claim that Dr. Chapman fails to reference any authority for his opinion other than a consent decree reached between the Department of Justice (the "DOJ") and the City of Newark, New Jersey.[5] Because it is the responsibility of the Court and not an expert witness to inform the

---

[5]   Defendants question how this consent decree is relevant because – even if Miami-Dade County adopted the same language – it would not establish the legal standard for deadly force.

jury of the relevant legal principles, Defendants request that Dr. Chapman's opinion on deadly force be excluded at trial.

Determining whether the force used in a seizure was excessive and unreasonable under the Fourth Amendment "requires a court to consider the 'nature and quality' of the intrusion on the individual's Fourth Amendment interests against the countervailing government interest at stake." *Cantu v. City of Dothan, Alabama*, 2020 WL 5270645, at *8 (11th Cir. Sept. 3, 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Eleventh Circuit looks at the reasonableness of the force used from the perspective of "a reasonable officer on the scene." *Id.* This is characterized as an objective test that does not consider an individual officer's intent or motivation. *Graham*, 490 U.S. at at 397. In other words, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id*.

There are several factors that inform whether the force used in an arrest was reasonable. The Supreme Court instructs courts to consider "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. "And in deadly force cases we are to determine whether the officer had probable cause to believe that the suspect posed a threat of 'serious physical harm' to the officer or others, and whether the officer had given the suspect a warning about the use of deadly force, if doing so was feasible." *Cantu*,

11

2020 WL 5270645, at *8 (citing *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009)).   Importantly, not all of these factors are relevant in excessive force cases.   *See, e.g.*, *Shaw v. City of Selma*, 884 F.3d 1093 (11th Cir. 2018).

Here, the parties disagree on whether Dr. Chapman should be allowed to testify on whether the Officers' conduct constitutes deadly force.   Plaintiff argues, on one hand, that Dr. Chapman's opinion is permissible because – although there is no binding precedent that establishes that a kick to a person's head constitutes deadly force – his testimony is relevant to the extent it informs the excessiveness of the force used.   The Officers contend, on the other hand, that there is no clearly established law in the Eleventh Circuit on whether strikes to the face constitute deadly force and that the Court, not Dr. Chapman, should instruct the jury on the law to be applied.   If Dr. Chapman is allowed to offer his opinion on what constitutes deadly force, Defendants are concerned that it would instruct the jury on what conclusion to reach and that this cannot be allowed when there is no rule in this circuit on whether the alleged conduct constitutes deadly force.

In determining whether the Officers' argument has merit, we return to the well-established principle that, while "an expert may testify as to his opinion on an ultimate issue of fact," an expert cannot "merely tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (citing Fed. R. Evid. 704).   This means that Dr. Chapman "may not testify to the legal implications of conduct," and tell the jury that the Officers engaged in deadly force because "the court must be the jury's only source of law." *Id.* (citing cases).   Indeed,

expert testimony is often unhelpful and "potentially confusing for the jury, when it purports to articulate the requirements of the law," and this danger can be even more pronounced where the opinion could differ from the "actual requirements set forth in binding legal authorities." *Washington v. City of Waldo, Fla.*, 2016 WL 3545909, at *4 (N.D. Fla. Mar. 1, 2016) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) ("It is the responsibility of the court, not testifying witnesses, to define legal terms"); *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (noting that an expert witness "is not qualified to compete with the judge in the function of instructing the jury"); *Specht v. Jensen*, 853 F.2d 805, 808-09 (10th Cir. 1988) (distinguishing "permissible testimony on issues of fact" and "testimony that articulates the ultimate principles of law governing the deliberations of the jury," which is not permissible, and noting the confusion that would result from competing expert testimony on the requirements of the law)).

The same concern is not presented here because Dr. Chapman is only opining that – based on the video footage and Plaintiff's allegations – it is reasonable to conclude that the Officers used deadly force. The Officers object to this opinion because they construe it as a way of defining deadly force with no support or legal authority in the Eleventh Circuit. But, Dr. Chapman never attempts to define deadly force. He merely states that, given the allegations of this case and the possibility that a jury finds them to be true, it is reasonable to conclude that the Officers' actions rise to the level of deadly force. The jury could arrive at this conclusion if they accept the allegations to be true and if they apply the relevant

legal principles that the Court already identified.

Notwithstanding this distinction, the Officers argue that Dr. Chapman's opinion should be rejected because it has no support in the Eleventh Circuit. Yet, that is not exactly true either. Plaintiff directs the Court's attention to the Eleventh Circuit's decision in *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000). There, the Court considered the question of whether excessive force against a handcuffed subject was sufficient to raise a question of fact as to whether the officers engaged in excessive force. The Officers argue that *Slicker* has little relevance to this case because the Eleventh Circuit never held that kicking or punching constituted deadly force. While that might be true, the Court did find that there was at least a question of fact as to whether the officers' actions constituted excessive force:

> Slicker testified, unambiguously, that after he was handcuffed, the officers repeatedly hit his head on the pavement, kicked him, and knocked him unconscious. If credited by the fact finder, this evidence suggests the officers used excessive force in beating Slicker even though he was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way. This evidential foundation is sufficient to raise a question of fact as to whether the officers' actions constituted excessive and not de minimis force.

*Slicker*, 215 F.3d at 1233. And given that possibility, it is unclear why this case could also not present a question of fact if the Officers beat Plaintiff mercilessly after he was arrested. In other words, it is possible that a jury could find Plaintiff's allegations to be credible and find that the Officers took actions that endangered his life with a severe beating that violates the Fourth Amendment.

14

The Officers are nonetheless concerned that there is a substantial risk that Dr. Chapman will mislead the jury on the law to be applied.  But, that concern is overstated because the Court, not Dr. Chapman, will instruct the jury on the law to be applied.  That is, even if Dr. Chapman takes the position that deadly force is a reasonable conclusion for a jury to reach, the jury could find the exact opposite because of both the evidence presented and the law of the Eleventh Circuit.  Thus, the Officers' motion to exclude Dr. Chapman's opinion on deadly force is **DENIED** because he never defines the scope of deadly force nor does he present the danger of instructing the jury on the law to be applied or the conclusion that they should reach.

### C.   _Whether Dr. Chapman Should be Precluded from Testifying about the Arrest Scene Video_

Defendants' third argument is that the Court should preclude Dr. Chapman from speculating on matters that took place on an arrest scene video.[6]   Dr. Chapman provides, in his expert report, a narration of the events that took place when the Officers took Plaintiff into custody.  Defendants claim that a portion of Dr. Chapman's opinions should not be allowed at trial because he made factual observations without any way to identify the officers or describe with any certainty the events that took place.  Dr. Chapman could not, for example, determine whether an officer kicked Plaintiff or the moment that the Officers restrained him.  The Officers accuse Dr. Chapman of lacking sufficient facts to form a reliable opinion and suggest that he is making improper credibility determinations when taking

---

[6]     There are approximately three pages in Dr. Chapman's expert report where he narrates a video that was taken when the Officers arrested Mr. Cendan.

many of the same positions that are consistent with Plaintiff's allegations. Defendants also contend that the video footage has several limitations – making it difficult to describe the events that took place and that a jury should be tasked with weighing the evidence presented.  As such, Defendants request that Dr. Chapman be precluded from testifying on matters that are based on speculation and guesswork.

Plaintiff's response is that it would be nonsensical to preclude Dr. Chapman from testifying on all matters related to the arrest scene video.  But, Plaintiff misconstrues Defendants' argument.  Defendants only seek to limit Dr. Chapman from testifying on matters where he is unsure of what took place on the day the Officers arrested Mr. Cendan.  That is, Defendants have no objection to Dr. Chapman testifying on matters that are readily observable to a lay witness and the use of his expert knowledge to the extent it applies.  Their argument is instead directed to Dr. Chapman using guesswork and speculation to determine matters that took place where the video is unclear because – while Dr. Chapman is an expert on policing – he has no expertise in determining uncertain portions of a video.  *See Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1358 (S.D. Fla. 2015) ("[E]xpert testimony regarding matters outside of the witness's expertise is inadmissible, even if the expert is qualified to testify about other matters.").

In light of that, the relief sought is a matter that be should reserved for the trial judge because we cannot decide in the abstract on what specific content falls within the domain of a lay witness as opposed to an expert skilled in video

technology.  While "relevant testimony from a qualified expert is admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation," "absolute certainty is not required."  *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988) (citing cases).  After all, it is possible that Dr. Chapman can explain at trial how his many years as a police officer and a professor enable him to decipher the smallest of details in a video that could give rise to an opinion that goes beyond that of a lay witness.  And that goes hand in hand with the principle that expert testimony is admissible if it "connects conditions existing later to those existing earlier provided the connection is concluded logically."  *Id.* (citing *Breidor v. Sears, Roebuck and Co.,* 722 F.2d 1134, 1138 (3rd Cir. 1983).

This is not to say that Defendants' argument lacks merit.  It only means that the basis for Dr. Chapman's testimony and the specific video footage that Defendants may object to should be within the discretion of the trial judge.  If, for example, the weaknesses in Dr. Chapman's testimony are not too attenuated from his professional experience, his observations of the video footage may go to the weight of his opinion rather than its admissibility.  The more appropriate approach, in that scenario, would be to give Defendants "the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility."  *Id.*  On the other hand, if Dr. Chapman is doing nothing but guessing as to what took place in the video and he cannot explain how his opinion is any better than that of a lay witness, a wholesale exclusion of his observations, as

they relate to matters that are uncertain in the arrest video, may be appropriate. This is why the issue presented is not something that we can decide in the abstract on a motion *in limine*. It should instead be presented to the trial judge to the extent Dr. Chapman seeks to testify on matters that are outside the scope of his expertise. Therefore, Defendants' motion to exclude Dr. Chapman's testimony on the arrest video is **DENIED** with leave to renew at trial.

### D.    *Whether Dr. Chapman's Critique of the Officers is Irrelevant*

The final issue is whether Dr. Chapman's critique on the way Officers approached Plaintiff's vehicle should be excluded at trial. Dr. Chapman opines that the Officers had "other reasonable alternatives" when they approached Plaintiff's truck and that, if they believed Plaintiff was an immediate threat, "they should have utilized a High Risk arrest protocol." [D.E. 284-1 at 44]. Dr. Chapman also opines that the method the Officers used put "everyone at greater risk," because they "creat[ed] a situation where they may [have] need[ed] to defend themselves from an attack." *Id*. at 29.

Defendants argue that Dr. Chapman's opinion is irrelevant because this case is only about one remaining issue – whether the Officers used excessive force against Plaintiff *after* he was subdued on the ground. Defendants claim that this is consistent with the Summary Judgment Order where the Court prohibited Plaintiff from "arguing or asserting at trial or to this Court that his actions before police dragged him to the ground were compliant, lawful, or otherwise reasonable under the circumstances." [D.E. 213 at 17 (citing cases)]. Indeed, the Court held that "to

18

recover damages [Plaintiff] will have to prove, among other things, that his damages were sustained after he was restrained by officers, not before." *Id*. at 17-18. Because Dr. Chapman's critiques are unrelated to whether the Officers used excessive force against Plaintiff when he was subdued on the ground, Defendants reason that this opinion is irrelevant and should be entirely excluded.

Defendants are, of course, correct in their contention that the Court's Summary Judgment Order found that the Officers were entitled to qualified immunity for actions taken prior to Plaintiff's arrest. This does not mean, however, that all facts beforehand should be deemed irrelevant and inadmissible. In fact, after the Court made clear that Plaintiff would have the burden of proving that his damages were inflicted after he was arrested, the Court left open the possibility of "challenging the credibility or recollection of the officers[.]" *Id*. at 17-18.

Defendants are skeptical of Plaintiff's approach because they view him as "hid[ing] beneath the umbrella of credibility to back-door this admissible evidence into trial." [D.E. 299 at 5]. But, the Court gave Plaintiff leeway to explore the Officers' credibility. This means that, even if qualified immunity attached to actions taken before the Officers arrested Mr. Cendan, Plaintiff is entitled to question their credibility and have the jury make a determination on their testimony and their actions. Defendants are, in other words, conflating credibility with liability. Defendants reason that they cannot be liable for any actions taken before they arrested Plaintiff and that any questions – even ones directed at their credibility – must be deemed irrelevant.

But, credibility does not attach only to actions taken before Plaintiff's arrest. If, for example, Plaintiff can undermine the credibility of the Officers for actions taken prior his arrest, that could inform how the jury weighs the remaining evidence on whether the Officers used excessive force after they subdued him. That is, while Plaintiff cannot hold the Officers liable for actions taken prior to his arrest, Dr. Chapman's opinion on whether the Officers had "other reasonable alternatives" when they approached Plaintiff's truck could be used to undermine their credibility. And credibility is almost always relevant because it allows a jury to assess all of the evidence presented even if a defendant can only be held liable for certain actions. *See United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."). The same is true in this case because, even if the Officers have qualified immunity for actions taken prior to Plaintiff's arrest, a jury can assess their credibility and determine whether they should be liable for actions taken after his arrest. Accordingly, Defendants' motion to exclude Dr. Chapman's opinion on the way in which the Officers approached Plaintiff's vehicle is **DENIED**.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to exclude Dr. Chapman is

**GRANTED in part** and **DENIED in part**:

A.     The Officers' motion to exclude Dr. Chapman's opinion on noble cause

corruption is **GRANTED**.

B.     In all other respects, the Officers' motion to exclude Dr. Chapman is

**DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20th day of

October, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge